**SIGNED THIS: August 08, 2007**

_____
**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | In Bankruptcy |
| BROCK M. CAMPBELL and ) | |
| CARRIE L. CAMPBELL, ) | Case No. 05-75853 |
| ) | |
| Debtors. ) | |
| _____ ) | |
| ) | |
| GARY JOHNSTON and ) | |
| PEGGY JOHNSTON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adversary No. 06-7028 |
| ) | |
| BROCK M. CAMPBELL, ) | |
| ) | |
| Defendant. ) | |

## O P I N I O N

This case comes before the Court on the Motion of Brock M. Campbell for Summary Judgment on a Complaint filed by Gary and

Peggy Johnston.  The Complaint seeks to except from discharge, pursuant to 11 U.S.C. §523(a)(2)(A), a debt allegedly owed to the Johnstons by Mr. Campbell on the grounds that Mr. Campbell fraudulently induced the Johnstons to purchase a 15-acre tract of real estate.  For the reasons set forth below, the Motion for Summary Judgment will be granted.

The following facts are undisputed.  The Debtors, Brock and Carrie Campbell, owned a 15-acre tract of real estate located at 31126 Terry Park Road, Palmyra, Macoupin County, Illinois.  The property is improved with a single-family residence and garage.  The Debtors listed the property for sale in June, 2000, with Mr. Campbell's mother, Brenda Campbell, as their real estate agent.

In November, 2003, the Johnstons looked at the real estate.  Their real estate agent, Michael Pasley, drove them around the property in his four-wheel drive vehicle but they did not talk with either of the Campbells.  The Johnstons did not make an offer to purchase the property at this time.

On April 16, 2004, the Johnstons returned to the property for a second viewing.  They did not bring their real estate agent on this trip.  Brenda Campbell gave them a tour of the house.

After the house tour, the Johnstons asked Mr. Campbell about the boundaries of the property.  Mr. Campbell told them that some of the boundaries could not be viewed from the fields or from a car because they were in the woods.  He offered to walk with them from

stake to stake or take them on an all-terrain vehicle ("ATV"). The Johnstons declined. Mr. Johnston asked Mr. Campbell for a "ballpark" visual of the boundaries. To fulfill that request, Mr. Campbell, Brenda Campbell, and the Johnstons got into Brenda Campbell's car and drove around the fields, with Mr. Campbell pointing out approximately where the boundaries were.

The Johnstons made an initial offer of $170,000, which was turned down. Further negotiations on April 16, 2004, led the parties to an agreement, and they executed a Contract To Purchase For Residential Real Estate wherein the Johnstons agreed to purchase the 15 acres from the Campbells for $173,000. The Contract identifies the property by both its common address and its real estate tax index numbers, but not by a legal description. At the time they signed the Contract, the Johnstons also received from the Campbells a Residential Real Property Disclosure Report, to which was attached a document labeled "Additional Sellers Disclosure." On the Additional Sellers Disclosure, the question "Where are the lot lines?" appears. The Campbells answered that question with the words, "See Survey."

On April 29, 2004, the transaction was closed. The Campbells executed a warranty deed conveying the property to the Johnstons. The warranty deed, which includes a full legal description of the property, was recorded with the Macoupin County Recorder on April 30, 2004.

After purchasing the property, the Johnstons built a fence to keep their horses confined. They subsequently learned that the fence encroached on a neighbor's property. They further learned that, although some of the property boundaries are in the woods, the boundaries for other parts of the property do not extend into the woods. Thus, the Johnstons did not obtain title to all the open area they had observed during their ride on April 16, 2004.

In July, 2004, the Johnstons filed a complaint against the Debtors and Brenda Campbell in the Illinois state court wherein they claimed that the Campbells made fraudulent misrepresentations concerning the boundary lines of the property.

The Debtors filed a voluntary Chapter 7 bankruptcy petition on October 7, 2005. The Debtors received a discharge on February 1, 2006.

The Johnstons filed this adversary proceeding on January 25, 2006. The Complaint, which purports to incorporate by reference the pending state court action, seeks a determination of nondischargeability pursuant to 11 U.S.C. §523(a)(2)(A) of the debt owed by the Debtors to the Johnstons for allegedly fraudulent misrepresentations regarding the boundary lines of the property transferred by warranty deed on April 29, 2004.[1] The Campbells denied making any false misrepresentations. They also denied that

---

[1] Although the pending state court action is referenced in the adversary complaint, no copy of the state court complaint was attached.

the Johnstons justifiably relied on any representations concerning the boundaries. Because, during discovery depositions, the Johnstons admitted that they never met or talked to Carrie Campbell prior to the closing, they have voluntarily dismissed her from this action. Mr. Campbell remains as the sole defendant and has filed the instant Motion for Summary Judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Bankr.P. 7056, *incorporating by reference* Fed.R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986). Summary judgment will be granted only where it is clear that there is no dispute about the facts or inferences to be drawn therefrom. Central Nat. Life Ins. Co. v. Fidelity and Deposit Co. of Maryland, 626 F.2d 537, 539 (7th Cir. 1980), *citing* U.S. v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994 (1962). On a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. In re Chambers, 348 F.3d 650, 654 (7th Cir. 2003). It is not the role of the trial court to weigh the evidence or to determine its credibility, and the moving party cannot prevail if any essential element of its claim for relief requires trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

249, 106 S.Ct. 2505, 2511 (1986). The movant bears the burden to prove each fact material to its claim and to establish that each fact is not in genuine dispute. If the movant fails to make that showing, summary judgment is not proper and must be denied. *See* In re Rogstad, 126 F.3d 1224, 1227-28 (9th Cir. 1997).

"The primary purpose of granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute." In re JII Liquidating, Inc, 341 B.R. 256, 263 (Bankr. N.D. Ill. 2006). Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to a judgment as a matter of law. ANR Advance Transp. Co. v. International Brotherhood of Teamsters, Local 710, 153 F.3d 774, 777 (7th Cir. 1998). The entry of summary judgment against a party is mandated if, after adequate time for discovery and upon motion, that party fails to make a showing sufficient to establish the existence of an element essential to that party's case. Celotex Corp. v. Catrett, 477 U.S. *at* 322, 106 S.Ct. *at* 2552.

This Court requires that all motions for summary judgment strictly comply with Local Rule 7.1(D) of the United States District Court for the Central District of Illinois. *See* CDIL-LR7.1(D); *see also* In re Clayton, ___ B.R. ___, 2007 WL 1467227 *4 (Bankr. C.D. Ill.). Local Rule 7.1(D) includes provisions which require a summary judgment movant to set forth a list of numbered undisputed material facts with a citation to the record for each

fact. The Rule then requires the non-movant to respond by specifically conceding that the fact is undisputed or by disputing the fact with relevant citation to the record.[2] The non-movant may also cite additional facts with citation to the record, to which the original movant may then respond. This process is necessary for a court to determine what facts are actually disputed. The benefits and efficiencies of motions for summary judgment are lost when these provisions of the local rules are not followed. *See* Clayton, 2007 WL 1467227 *at* *8.

Here, the movant, Mr. Campbell, made an attempt to comply with Local Rule 7.1(D). His Motion for Summary Judgment contains a section which lists undisputed facts. The numbered facts, however, are often full paragraphs containing multiple facts and, to some degree, argument interspersed with the facts. The non-movant Plaintiffs made no attempt whatsoever to comply with the Local Rule. Their Response simply contains a narrative of their version of the facts without any reference to the undisputed facts in the Defendant's Motion. The Seventh Circuit has held that failure to comply with local rules may result in serious consequences to the offender. *See* Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994). With this authority in mind, the Court will

---

[2] Local Rule 7.1(D) also allows parties to dispute facts but state that the facts are not material and provide a reason as to the lack of materiality.

proceed on the merits of the Motion for Summary Judgment.

The main purpose of a discharge in bankruptcy is to give a debtor a fresh start. In re McWilliams, 284 F.3d 785, 790 (7th Cir. 2002). The party seeking to establish an exception to the discharge of a debt bears the burden of proving each element of the exception by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Exceptions to discharge are construed strictly against a creditor and liberally in favor of a debtor. In re Scarlata, 979 F.2d 521, 524 (7th Cir. 1992).

Section 523(a)(2)(A) of the Bankruptcy Code provides as follows:

> (a) A discharge under section 727. . . of this title does not discharge an individual debtor from any debt –
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition(.)

11 U.S.C. §523(a)(2)(A).

Although three independent grounds for nondischargeability are listed, courts have historically applied a single, unified test to actions brought under this section. The traditional analysis contains the following elements: (1) the debtor made a

representation to the creditor; (2) the debtor's representation was false; (3) the debtor possessed *scienter*, i.e., an intent to deceive; (4) the creditor relied on the debtor's misrepresentation, resulting in a loss to the creditor, and (5) the creditor's reliance was justifiable. <u>Field v. Mans</u>, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995); <u>In re Jairath</u>, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001).  Because Plaintiffs have the burden of proving each element of their cause of action, the Defendant need establish the lack of available proof on only one element to prevail in his Motion for Summary Judgment.

The Johnstons complain that Mr. Campbell falsely represented that the boundary lines "were in the woods".  Mr. Campbell does not dispute that he made a statement to this general effect, but denies that it was a fraudulent misrepresentation.  The parties agree that some, but not all, of the boundary lines are in the woods.  The Johnstons asked for a "ballpark" estimation of the boundary lines, and Mr. Campbell prefaced at least some of his explanations about the boundary lines by stating that he was not really sure where the stakes were or exactly where the boundary lines were.  It is difficult to see how these obviously imprecise discussions about boundary lines could constitute fraudulent misrepresentations.

Nevertheless, summary judgment cannot be granted on this issue.  The parties submitted deposition testimony of the Johnstons and Mr. Campbell along with a survey and a map which were used as

exhibits at the depositions. The deposition testimony is unclear as to exactly where the parties were when they discussed the boundaries. In the depositions, the parties are asked to point to various places on the documents to show where they were at various times but, in many instances, the places to which they pointed were not marked or identified clearly. For example, in the deposition of Gary Johnston taken by Mr. Campbell's attorney, the following exchange occurs while Mr. Johnston is presumably looking at the survey:

> Q (by Mr. Narmont): And are you driving around the property that looks approximately like that survey that's identified as Brock Campbell 1?
>
> A (by Mr. Johnston): No. We're driving more like on the aerial of it. See, these fields would appear to go like this here. They do go like that there. It's the end of a cornfield is what it is.

Transcript of Deposition of Gary Johnston taken April 12, 2006 *at* p. 18.

This Court has no idea what or where "this here" and "that there" are. Thus, the Court cannot be sure of what the facts are regarding the parties' conversations and cannot say that there are no material undisputed facts regarding what representations were made by Mr. Campbell to the Johnstons.

Mr. Campbell also asserts that there is no genuine issue of material fact as to his lack of fraudulent intent. He notes that he gave the Johnstons several opportunities to examine the actual boundary lines. Further, a survey was available and referenced in

the sale documents.  Additionally, no motive to misrepresent appears from the record.  There is no evidence that anything in the conversation would have lead Mr. Campbell to think that the Johnstons were concerned about the precise boundaries to the extent that the location of the boundaries would be determinative of any purchase offer they might make.  To the contrary, the Johnstons admitted that they asked only for estimates and declined to make the effort to walk or travel by ATV to determine the exact boundaries.  Further, their ultimate offer was not conditioned upon receipt or review of a survey.  However, state of mind issues such as fraudulent intent generally cannot be disposed of by summary judgment.  <u>In re Berry</u>, 197 B.R. 382, 383 (Bankr. M.D. Fla. 1996).  The Court may not infer fraudulent intent, or the lack thereof, from the paper record before it.  This is particularly true when, as set forth above, the Court is unsure of what was said that may have constituted the fraudulent misrepresentation.

   Mr. Campbell's case for summary judgment is much stronger on the issue of justifiable reliance.  Mr. Campbell asserts that the Johnstons are not able to offer any evidence of their justifiable reliance on his statements about the boundaries.  The Johnstons' sole response on the issue of justifiable reliance is their conclusory  allegation that "the statements of Brock Campbell that all of the open areas were subject to the purchase is a sufficient justifiable reliance to meet the Plaintiffs' burden of proof."  The

Court disagrees.

Reliance on a false representation under §523(a)(2)(A) must be justifiable. Field v. Mans, 516 U.S. *at* 74-75. Whether a party justifiably relies on a misrepresentation is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff, not by an objective standard. Id. *at* 71; In re Dobek, 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002). The justifiable reliance standard does not generally impose a duty to investigate. Field v. Mans, 516 U.S. *at* 70-72. However, a "plaintiff may not bury his head in the sand and willfully ignore obvious falsehoods." In re Tomlinson, 1999 WL 294879 *at* *12 (Bankr. N.D. Ill.). "[A] person is required to use his sense and cannot recover if he blindly relies on a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." Field v. Mans, 516 U.S. *at* 71; In re Alvi, 191 B.R. 724, 731 (Bankr. N.D. Ill. 1996).

In this case, the Johnstons asked Mr. Campbell for an "approximate" or "ballpark" description of the boundary lines. Mr. Campbell responded to this nonspecific inquiry that the boundary lines "were in the woods". Mr. Campbell offered to personally escort the Johnstons by foot or ATV to view the surveyor stakes, but they refused. *See* Yates v. Cummings, 4 Ill.App.3d 899, 902, 282 N.E.2d 261 (1972) (When surveyor pins were clearly visible, and

purchaser provided with opportunity to check the property, purchaser could not justifiably rely on seller's alleged false representation.)

Mr. Campbell did not move or conceal the surveyor stakes in an attempt to mislead prospective purchasers about the boundary lines. The stakes were visible to anyone who cared to look, and they were consistent with the survey plat. The disclosure statement urged prospective purchasers interested in the lot lines to "See Survey", but the Johnstons failed to review or even request the survey prior to the purchase.

The Johnstons met Mr. Campbell for the first time when they toured the property on April 16, 2004. They did not have a personal relationship or history of past dealings with Mr. Campbell which would have lead them to place their trust and confidence in him. Mr. Campbell stated in their conversation that he did not know the exact boundaries of the property. The Johnstons had no basis for blindly accepting Mr. Campbell's ambiguous description of the boundary lines without even a cursory examination of the surveyor stakes or the survey plat.

The weakness of the Johnstons' position on justifiable reliance is pointed out by the following exchange which occurred during Peggy Johnston's deposition, in which she described the drive and conversation of April 16, 2004, after she oriented herself by looking at an exhibit:

> Q (by Mr. Narmont): Okay. That's marked as being on this piece of property that protrudes to the north, right?
>
> A (by Mrs. Johnston): Uh-huh. And I'm saying this here's the house only because I know it now after I bought it. We took this --. We went out the driveway this way, we went on down to the cove. All this is trees. There's actually a set of five coves. We took the vehicle and we drove around each, and I don't know where is what, but we drove around all the tree lines in and out and viewed that.
>
> Q: Okay.
>
> A: And we did stop at one point. And it would have been right in here and we looked and we said that's a very nice place. They have hickory trees and stuff. And he said I really don't know how much I own on this, it's either all the way to the hill or halfway down the hill. Well, seeing all the area we were buying, we really didn't care if it went halfway down the hill because we were purchasing the open area.
>
> Q: Who was it that made the statement?
>
> A: Brock Campbell.
>
> Q: And he said what? I don't know whether my property goes down the hill or halfway down the hill?
>
> A: Yeah. Gary asked him approximately where is the boundary lines from the vehicle where we had stopped. And that would have been to the north around all the trees and he said I'm really not sure offhand, it's somewhere between the middle, or to the end, or to the middle....

Transcript of Deposition of Peggy Johnston taken April 12, 2006 *at* pp. 14-15.

It is difficult to understand how or why the Johnstons would have relied on this conversation to determine where the boundary lines of the property were. If the boundaries were as important to

them as they now allege, Mr. Campbell's repeated statements that he was unsure of what he owned should certainly have triggered some further inquiry.

The Johnstons have not shown any objective evidence of their justifiable reliance. Instead, the record before the Court shows a cavalier inattention to the specific details of the boundary lines. The Johnstons thought they were purchasing 15 acres and, in fact, they did purchase 15 acres. The fact that they did not buy the exact 15 acres that they thought they were buying cannot be blamed on Mr. Campbell. Viewing all the evidence in the light most favorable to the non-movants - the Johnstons - leads inescapably to the conclusion that their self-professed reliance on Mr. Campbell's statements about the location of the property boundaries was not justifiable.

For the foregoing reasons, the Defendant's Motion for Summary Judgment is granted.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###